trolling. That case, upon its facts, is clearly distinguishable from the one at bar, as shown by the language of the opinion:

"There was no evidence that the plaintiff looked at all in either direction for approaching vehicles, and the evidence tends to show that she entered upon the crossing, and walked along upon it without taking any precaution for this purpose; that, had she looked, she should have seen the horse and cart in time to have avoided the danger; that for some unexplained reason she failed to hear the cry of the driver, made for the purpose of notifying her of her danger, although such cry was heard by persons at much greater distance than the plaintiff, and which would have been heard by her in time to have avoided the danger, if reasonably attentive to the danger of her situation. We have already seen that it was her duty to look along the street to see if it was safe to proceed. This she could have done without stopping. Turning the eyes along the street required no special effort, and, if her failure to do this contributed to the injury, she had no right of recovery."

Here the person in whose care the child was stopped at the corner before proceeding on the crosswalk, and saw the position and direction of the brewery wagon, and not only was she not warned, but the evidence is that the driver was the one that was warned, and that, heedless of such warning, he continued on his course.

We think that the disposition made below was wrong; that, upon the facts appearing on the plaintiff's evidence, the question of contributory negligence was one of fact for the jury; and that therefore the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

## In re FERRIGAN'S ESTATE.

(Supreme Court, Appellate Division, First Department. June 9, 1899.)

1. REFEREE—APPOINTMENT BY SURROGATE.
    Code Civ. Proc. § 2546, empowering the surrogate to appoint a referee to take and report the evidence on the facts, and to make a report thereon, subject to confirmation or modification, authorizes him to direct the referee to report the evidence, with his opinion thereon.
2. SAME—ORDER OF APPOINTMENT.
    An order of appointment of a referee to report the evidence, with his opinion on it, if too broad, under Code Civ. Proc. § 2546, empowering the surrogate to appoint a referee to take and report the evidence on the facts, and to make a report thereon, subject to confirmation or modification, does not make void the proceedings thereon before the referee, or prevent the surrogate, on the coming in of the report, from proceeding on the testimony, but the remedy is by appeal from the order.
3. SAME—NOTICE OF HEARING.
    In case of appointment in a special proceeding of a referee by the surrogate, under Code Civ. Proc. § 2546, to take and report the evidence, and make a report thereon, subject to confirmation or modification, reasonable notice only of proceedings before the referee is necessary, there being no statutory provision in regard thereto; section 977, requiring notice of 14 days, relating only to trial of issues in an action.
4. SAME—ADJOURNMENT.
    It is equivalent to an adjournment by the referee of the hearing till 4 o'clock, where notice of the engagement of the referee in court at the hour originally set, and that there are witnesses to be examined on behalf of the petitioner, and that the referee will be in his office at 4 o'clock on that afternoon, is given to the attorney of the other party by the referee

before the time fixed for the hearing, and by the representative of the petitioner at the referee's office at the time fixed.

**5. ADMINISTRATRIX—REMOVAL—COSTS.**

Where F., an ignorant and illiterate man, retained T., an attorney, to protect his interest in the matter of the estate of a deceased relative, and T., after procuring his wife to be joined as administratrix with F., as administrator, took possession of the estate, neglected to proceed in a proper manner in the settlement of the estate, appropriated the income thereof to his own use under the guise of acting as attorney, made a grossly excessive charge for his professional services, procured the administrator and administratrix to sign an account reciting that such payment had been made, and endeavored to have such accounts passed and such payment allowed, removal of the administratrix, she being charged with the costs of the proceedings, is proper.

**6. SAME—OBJECTION TO ACCOUNTS.**

It is within the discretion of the surrogate to allow an administrator to file objections to the account filed by the administratrix, the same as if time to file them had not expired under the rule, and as if he had not signed the account.

Appeal from surrogate's court, New York county.

In the matter of the estate of Rose Ferrigan, deceased. From a decree of April 13, 1898, removing Jennie Tinney as administratrix, and charging her with the costs of the proceedings, and from an order of May 2, 1898, modifying an order of reference to a referee on the judicial settlement of the accounts of the administrators, and allowing John Flynn, the administrator, to file objections to the account filed by said Jennie Tinney as administratrix, the same as if the time in which to file them had not expired under the rule, and as if he had not signed said account, said Jennie Tinney appeals. Affirmed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Bernard J. Tinney, for appellant administratrix.
Carlisle Norwood, for respondent administrator.

INGRAHAM, J. Letters of administration upon this estate were issued to the appellant, Jennie Tinney, and to the respondent, John Flynn, by the surrogate of the city and county of New York; the deceased having died intestate. John Flynn was a nonresident, living in the state of Rhode Island, and seems to have been an ignorant and illiterate man, without knowledge of proceedings of this character. He claimed to be the first cousin of the deceased, and one of her next of kin. After the death of the deceased, Flynn called upon Mr. Bernard J. Tinney, an attorney at law, to represent him in the proceedings in regard to her estate. Mr. Tinney suggested to Flynn that his (Tinney's) wife would be pleased to act as co-administrator with Flynn, in case he should ask for her appointment as such in the petition. This Flynn consented to. Mr. Tinney prepared the petition for the appointment of the administrators, and the same was executed by Flynn. Upon that petition, letters of administration were issued to John Flynn and Jennie Tinney. Mr. Tinney then applied to the Lawyers' Surety Company to give a bond, which bond was given, Flynn and Jennie Tinney signing such application, by which it was agreed that the administrators would deposit all money or funds belonging to the estate which should come into their possession

or control in a trust company, all drafts or checks drawn upon that fund to be countersigned by the surety company, and also to deposit in the custody of the said surety company all bonds and mortgages or other securities, and all other depositable sureties, belonging to the estate; and upon the execution of that agreement the surety company executed the bonds required by law upon the appointment of an administrator.    Letters of administration were issued on October 19, 1894.    The estate consisted of a small amount of household furniture, which appears to have been sold at auction, realizing about $70, and a bond of $15,000, secured by a mortgage upon certain real estate in the city of New York.    Upon the administrators qualifying, Mr. Tinney seems to have taken possession of this estate, and to have collected the interest upon this bond and mortgage, which he deposited in his own bank account, and used for his own purposes.    The total amount of this interest thus received by Mr. Tinney was upwards of $2,400, and none of it was paid to the surety company under the agreement.    No proceedings seem to have been taken by the administrators or by Mr. Tinney to close the estate until December 7, 1896, over two years after the letters of administration were issued, when the administrators filed an account of their proceedings with the surrogate, and the usual order of reference was made to hear and determine all questions arising upon the settlement of the account.    These accounts appear to have been signed by both the administrator and the administratrix, but it is quite clear from the testimony that neither understood anything about them, they having been the production of Mr. Tinney, who had transacted all the business of the estate, and appears to have really acted as administrator; and, although it is stated that all the accounts were explained to Flynn, it is quite evident from his testimony that he really understood nothing about them.    By these accounts it appears that Mr. Tinney had charged $2,000 for his professional services and disbursements made by him in connection with the administration of the estate, and that that amount had been paid to him by the administrators. Subsequently an application was made by Flynn for the removal of Jennie Tinney as such administratrix, upon petition and affidavits. The surrogate before whom this application was brought on for hearing stated that he was unable to determine the question of fact raised by the affidavits, and appointed a referee to take such testimony as would be produced by the respective parties, and to report the testimony so taken, with his opinion thereon, to the court.

The appellant questions the power of the court to make this order; his objection apparently being that the referee was requested to report the testimony taken, with his opinion thereon, to the court, and that there is no authority for the surrogate to request the opinion of the referee upon testimony taken before him.    This objection seems to be frivolous.    By section 2546 of the Code it is provided that "in a special proceeding, other than one instituted for the probate or revocation of probate of a bill, the surrogate may, in his discretion, appoint a referee to take and report to the surrogate the evidence upon the facts, or upon a specific question of fact," and to make a report

thereon,—subject, however, to confirmation or modification by the surrogate. Certainly, if the surrogate has power to appoint a referee to take the testimony upon a question of fact before the surrogate, and to make a report thereon, he has power to direct the referee to report with his opinion upon the evidence taken. A report with the opinion upon evidence taken is, in substance, the same as a report upon the question of fact pending before the surrogate, which the section of the Code in question authorizes the surrogate to refer to a referee to report upon. But, if the order was broader than the statute allowed, it was the duty of any one aggrieved to appeal from it. The proceeding upon the order before the referee was not void; nor was the surrogate, upon the coming in of the report of the referee with the testimony taken by him, prevented from proceeding upon such testimony, and deciding the application.

The appellant also strenuously objects to the proceeding before the referee upon the ground that he did not receive 14 days' notice, which he claims is required upon a hearing of this kind. This, however, was not the trial of the issues joined in an action. Section 977 of the Code, which requires a notice of 14 days, relates only to the trial of such issues in an action. There seems to be no provision of the Code as to the notice of a hearing before a referee in such a proceeding as the present. All that is required is that reasonable notice of the proceeding should be given to the adverse party. This notice was given to the appellant 10 days before the day fixed by the referee for proceeding under the order of reference, and such notice was ample. Upon the day fixed for the hearing the appellant appeared before the referee at the hour named, but at that time the referee was actually engaged in court, trying a case, of which fact the appellant's attorney had notice. Notice was also given to him that there were witnesses to be examined on behalf of the petitioner, and that the referee would be in his office at 4 o'clock on that afternoon. This notice was given to the appellant's attorney by the referee in person before the time fixed for the hearing, and also by the representative of the respondent at the office of the referee at the time fixed. This was equivalent to an adjournment by the referee of the hearing until 4 o'clock of the same afternoon. The appellant failed to appear at that time, when the testimony of two witnesses was taken; it being understood that the rights of the appellant to object to such testimony and cross-examine the witnesses at a subsequent hearing was reserved. An opportunity to cross-examine the witnesses was subsequently accorded to the appellant, who then refused to proceed with the cross-examination, and made no specific objection to any of the testimony of the witnesses taken before the referee in his absence. Assuming, however, that this proceeding was somewhat irregular, the appellant sustained no injury, as we think that, upon the testimony offered by the appellant upon the hearing before the referee, the surrogate was not only authorized, but was required, to make the decree which he did. The referee subsequently proceeded to take the testimony offered by the respective parties, when it appeared by the testimony offered by the appellant that this respondent, an ignorant

and illiterate man, had retained Mr. Tinney to protect his interest, that Mr. Tinney had procured his wife to be joined as administratrix with the respondent as administrator, and that he (Mr. Tinney) immediately took possession of the property of the estate, neglected to proceed in a proper and orderly manner in the settlement of the estate, appropriated the income thereof to his own use, under the guise of acting as attorney for the administrators, and then proceeded to make a charge against the estate of $2,000 for his professional services, which was grossly excessive, and out of all proportion to the service's rendered or the amount of the estate, and procured the administrator and administratrix to sign an account which recited that such payment for professional services had been made, and endeavored to have such accounts passed and such payment allowed.

It is unnecessary for us to further consider this testimony. We are satisfied that the surrogate was justified and required to make the decree that he did, and that it should be affirmed. The order appealed from was in the discretion of the surrogate, and, under the circumstances, was entirely proper. That order is also affirmed. We also approve of the disposition that the surrogate made of the costs of this proceeding, and the costs of this appeal should be directed to be paid by the appellant personally. All concur.